IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DMITRY ANISIMOV

v.                                                                    Civil No. CCB-09-2536

HOSPITALITY PARTNERS, LLC, et al.

MEMORANDUM

Plaintiff Dimitry Anismov ("Anisimov" or "plaintiff") brought a complaint consisting of seven counts against defendants Hospitality Partners, LLC ("Hospitality Partners"), Carousel F & B, LLC ("Carousel"), Michelle Mason Sherman ("Sherman"), Lee Rogers Morris ("Morris"), Mayor and City Council of Town of Ocean City, and Officer Earl Brathwaite ("Brathwaite"). The counts are: (1) violation of plaintiff's constitutional right to be free from "unreasonable" arrest under 42 U.S.C. § 1983; (2) conspiracy to violate constitutional rights under § 1983; (3) violation of state constitutional rights of due process and freedom from unreasonable arrest; (4) conspiracy to violate state constitutional rights; (5) malicious prosecution; (6) false arrest[1]; and (7) defamation. Defendants Hospitality Partners, Carousel, Sherman, and Morris ("Non-Government Defendants") moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion to dismiss will be granted.

BACKGROUND

At times pertinent to the complaint, Anisimov was a bartender at the Carousel Hotel in Ocean City, Maryland. On or about June 2, 2008, Morris and Sherman, employees of Hospitality Partners and Carousel, accused him of committing theft, making the allegation to

---

[1] Count VI does not pertain to the Non-Government Defendants.

Brathwaite, an Ocean City police officer. Brathwaite then reviewed a videotape that allegedly did not corroborate the accusations. Nevertheless, Brathwaite arrested Anisimov on June 2, 2008, and charged him with theft. As a result of the arrest, the plaintiff was incarcerated and forced to retain counsel. He was ultimately acquitted in the District Court of Maryland for Worcester County. According to Anisimov, the arrest and trial caused him to suffer humiliation, worry, and concern. He also lost his job as a bartender at a time when it was difficult to find another job.

## ANALYSIS

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth

sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1950 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).

The Non-Government Defendants have moved to dismiss all of the claims brought against them. Each will be discussed in turn.

A. Count I

To succeed on a § 1983 claim, a plaintiff must prove three elements: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). "The person charged [under Section 1983] must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999) (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991)) (other citations omitted). "[P]rivate activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it into state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient." *Id.* at 507 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

To determine whether a private party is acting under the color of state law, the Fourth Circuit evaluates the "totality of the circumstances," using factors such as:

> (1) whether the injury caused is aggravated in a unique way by the incidents of governmental authority; (2) the extent and nature of public assistance and public benefits accorded the private entity; (3) the extent and nature of governmental

>regulation over the institution; and (4) how the state itself views the entity, i.e., whether the state itself regards the actor as a state actor.

*Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 343 (4th Cir. 2000) (internal quotations and citations omitted).  A private corporation may be held liable under § 1983 "*only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks*, 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original); *see also Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003) (same).

In Count I, plaintiff alleges that defendants were acting under color of state in law in falsely accusing him of theft, resulting in the deprivation of his constitutional rights.  The Non-Government Defendants argue that as two former coworkers and two private companies, they were neither state actors nor acting under color of state law.  None of the *Goldstein* factors point toward the coworkers acting under color of state law.  They were not wielding any power enhanced by government sponsorship, they were not regulated by the government, they received no unique public benefits, and there is no indication the state would consider them to be state actors.  They were merely private citizens filing a police report.  The companies also were not acting under color of state law.  Anisimov has not even suggested that an official company policy led to the deprivation of his federal rights.

  B.  Count II

Although a § 1983 claim normally is brought only against state officials or those acting under color of state law, "a § 1983 claim may be proved by showing that a person acting under color of state law collaborated or conspired with a private person to deprive the plaintiff of a constitutional right." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (internal alterations and citations omitted).  The elements of a conspiracy claim under § 1983 are that "the

[defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996).

At the motion to dismiss stage, the plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This requires a "plausible suggestion of conspiracy." *Id.* at 566. The plaintiff must plead facts that would "reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 421.

Here, Count II alleges: "Defendants conspired to arrest Plaintiff when there was no evidence of any wrongdoing," thus violating his constitutional rights. This conclusory allegation is plainly insufficient. No facts have been pled that would reasonably lead to an inference of mutual understanding among the defendants.[2]

C. Counts III and IV

Counts III and IV, the Maryland Constitutional claims, will be dismissed for the same reasons as Counts I and II. Articles 24 and 26 of the Maryland Constitution are construed in the same way as the corresponding rights in the United States Constitution. *Okwa v. Harper*, 757 A.2d 118, 140-41 (Md. 2000) ("Maryland courts often have looked to federal cases interpreting the parallel federal provision."); *Williams v. Prince George's County*, 685 A.2d 884, 895 (Md. 1996) ("The essential analysis . . . is the same under Articles 24 and 26 of the Maryland Constitution as that under the Fourth Amendment to the United States Constitution."). As is specifically relevant here, both state constitutional claims require the defendant to be a state

---

[2] Plaintiff's reliance on *Conley v. Gibson*, 355 U.S. 41 (1957) in this regard is misplaced. *Gibson* was explicitly abrogated by *Twombly*.

actor. *Okwa*, 757 A.2d at 140 ("Constitutional provisions like Articles 24 or 26 of the Maryland Declaration of Rights . . . are specifically designed to protect citizens against certain types of unlawful acts by government officials.") (quoting *Clea v. Mayor and City of Baltimore*, 541 A.2d 1303, 1314 (Md. 1988).)

Here, the parties acknowledge that the arguments made in the context of the federal claims apply equally to the state claims. Thus, for the reasons stated in greater detail above, the state constitutional claims against the Non-Government Defendants will be dismissed.

D.  Count V

To state a claim for malicious prosecution in Maryland, a plaintiff must show that "(1) the defendant(s) instituted a criminal proceeding against the plaintiff; (2) the criminal proceeding was resolved in favor of the plaintiff; (3) the defendant(s) instituted the criminal proceeding without probable cause; and (4) the defendant(s) acted with malice or for the primary purpose other than bringing the plaintiff to justice." *S. Mgmt. Corp. v. Taha*, 836 A.2d 627, 637 (Md. 2003) (citations omitted).  A malicious prosecution claim may be maintained against a corporate entity based upon the actions of its agents through the doctrine of respondeat superior, "where it has been shown that the employee was acting within the scope of the employment relationship at the time." *Id.* at 637-38 (citations omitted).

Although the first two elements of a malicious prosecution claim appear to be met here, the plaintiff has failed to meet the pleading requirements for the third and fourth elements. Anisimov's sole basis for arguing that there was no probable cause for his arrest is that "it was apparent from the security tape that he had committed no crime." (Complaint at ¶ 35.) The fact that the videotape did not show him stealing does not, however, mean that Non-Government

Defendants, specifically his coworkers, lacked probable cause from some other source.[3]  In fact, according to the complaint, Brathwaite was the only person to review the tape.  (Complaint at ¶ 8.)  Therefore, even if the videotape plainly exonerated plaintiff, Non-Government Defendants are not alleged to be aware of that fact.  Further, Anisimov has failed to support the fourth element of the claim, aside from offering the conclusory allegation, "Defendants acted with malice." (Complaint at ¶ 39.)   There is absolutely no fact alleged from which even an inference of malice could be gleaned.  And, because the plaintiff has failed to make the necessary showing to sustain a claim for malicious prosecution against his coworkers, he cannot maintain a claim against their employer through vicarious liability.

   E.  Count VII

The statute of limitations for a defamation claim in Maryland is one year.  Md. Code. § 5-105; *see also Indep. Newspapers Inc. v. Brodie*, 966 A.2d 432, 448 (Md. 2009).  A defamation claim accrues when the allegedly defamatory statement is made, or, at the latest, when the plaintiff knows or reasonably should have known that the statement was made, regardless of whether the harm allegedly suffered occurs at a later date.  *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 464 (D. Md. 2008).

Here, the allegedly defamatory statements were made on or around June 2, 2008.  The plaintiff did not file his complaint until September 28, 2009.  The defamation claim is therefore untimely and will be dismissed.[4]

---

[3] Apparently the employees believed they saw Anisimov pocketing cash several times during his shift.

[4] Because the claim is untimely, it is unnecessary to evaluate whether the plaintiff pled a prima facie case of defamation.  The court notes, however, that a report to police is covered by a qualified privilege. *See Caldor, Inc. v. Bowden*, 625 A.2d 959, 969 (Md. 1993).  This means the plaintiff would be required to show actual malice to prevail on the defamation claim, *id.*, and he makes no such supported allegation in his complaint.

## CONCLUSION

For the foregoing reasons, the Non-Government Defendants' motion to dismiss will be granted. A separate Order follows.

<u>February 24, 2010         </u>__          <u>   /s/     </u>_____
Date                                              Catherine C. Blake
                                                  United States District Judge